THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SEAN DARRAGH,<br>Plaintiff,<br>v.<br>SGT. GREG MOFFITT et al.,<br>Defendants. | **MEMORANDUM DECISION AND ORDER DISMISSING SOME DEFENDANTS AND CLAIMS, AND SCHEDULING FURTHER LITIGATION**<br>Case No. 2:23-cv-00630-JNP<br>Chief District Judge Jill N. Parrish |

As a federal inmate in Florida, Plaintiff Sean Darragh filed this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983[1] and proceeding *in forma pauperis*. ECF Nos. 1, 8; *see* 28 U.S.C. § 1915 (proceedings in forma pauperis).

Screening Plaintiff's Amended Complaint, the Court identified deficiencies, gave guidance on curing those deficiencies, and ordered "Plaintiff to file a second amended complaint to cure deficiencies before further pursuing claims." ECF No. 13 at 1. Plaintiff then filed his Second Amended Complaint. ECF No. 14. Plaintiff now moves to file a third amended complaint. ECF No. 16. Good cause appearing, the Court grants the motion to amend and orders the Clerk's Office to file the Third Amended Complaint ("TAC"). ECF Nos. 16-1, 16-2.

[1]Section 1983 reads in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Having now screened the TAC[2] under its statutory review function,[3] the Court dismisses some claims and defendants and orders further litigation as to the remaining claims and defendants.

**A. BACKGROUND**

The information in this section is drawn from the TAC, and the following summary of facts is accepted as true for this Order only. ECF Nos. 16-1, 16-2.

On September 8, 2021, Sandy City Police Department ("SCPD") Special Weapons and Tactics ("SWAT") officers "executed a search warrant . . . at Plaintiff's residence." During the incident, certain defendants threatened Plaintiff and assaulted him, then delayed medical care for his resulting injuries. After Plaintiff was taken to the hospital for treatment of his wounds, several defendants kept him handcuffed to the bed for most of his stay and did not charge or release him within statutory time limits. Plaintiff then faced charges for his part in the altercation during the search warrant execution. The state charges were later dismissed after federal convictions were obtained. *See State v. Darragh*, No. 211910277 (Utah 3d Dist. Ct. Apr. 24, 2023); *United States v. Darragh*, No. 2:21-CR-497-DS (D. Utah Mar. 30, 2023), ECF No. 98.

First, in their official and individual capacities, Plaintiff names the following SCPD defendants: Sergeant Moffitt, SWAT; Sergeant Robertson, SWAT; Sergeant Cobb, SWAT;

---

[2] *Pro se* pleadings are liberally construed, "applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citations omitted). This means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

[3] The screening statute reads:

> (a) Screening.--The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

Officer Wendelboth, SWAT; Lieutenant Worthington, SWAT[4]; "Doe-1," SWAT; "Doe-2," SWAT; Chief Doe, chief of police; and Sandy City ("SC") (official capacity only).

Second, in their official and individual capacities, Plaintiff names the following Salt Lake ("SL") County defendants: Lieutenant Doe, investigator for district attorney ("DA"); "Deputy Doe," jail; "Deputy-Supervisor Doe," jail; Sim Gill, DA; "Jane Doe," assistant DA ("ADA"); SL County (official capacity only); and SL County "adult detention center"[5] (official capacity only).

Third, in their official and individual capacities, Plaintiff names the following SL City Police Department ("SLCPD") or SCPD defendants: "Detective Doe-1"; "Detective Doe-2"; "Doe-3," officer; "Doe-4," officer; "Doe-5," officer; "Doe-6," officer; "Doe-7," officer; "Doe-8," officer; "Doe-9," officer; "Doe-10," officer; "Doe-11," officer; "Doe-12," officer; "Doe-13," officer; "Doe-14," officer; "Doe-15," officer; "Doe-16," officer; and "Doe-17," officer.

Plaintiff alleges these defendants variously (1) assaulted him, using excessive force; (2) showed deliberate indifference to his serious medical needs; (3) violated state tort law; (4) set unconstitutional policies; (5) maliciously prosecuted and detained him; and (6) unlawfully conspired against him. He asserts, among other things, that these actions breached his federal constitutional rights against excessive force and cruel and unusual punishment, and his state constitutional right against unnecessary rigor. *See* U.S. Const. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by

---

[4] Defendant Worthington is mentioned in only four places in the TAC: in the lists of defendants on the face, third, and eighth pages, and in a section alleging an excessive-force cause of action against Defendants Cobb, Wendelboth, and SCPD Officer Doe-2. ECF No. 16-2 at 1, 3, 8, 19. In the latter section, Worthington is mentioned only as an aside, stating that he "had been posted in the parking garage prior to the operation." *Id.* at 19. Worthington is therefore dismissed and not further considered.

[5] Plaintiff refers to the facility as the "adult detention center," while SL County calls it "Salt Lake County Metro Jail" ("SLCMJ"), which is how it will be referred to in this Order. *See* https://saltlakecounty.gov/sheriff (last visited Apr. 24, 2026).

Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.")[6]; Utah Const. art. 1, § 9 ("Persons arrested or imprisoned shall not be treated with unnecessary rigor.").

To remedy his injuries, Plaintiff requests damages.

## B. *SUA SPONTE* DISMISSALS FOR FAILURE TO STATE A CLAIM

### 1. Standard of Review

Assessing a complaint for failure to state a claim upon which relief may be granted, this court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when—though the facts are viewed in the plaintiff's favor—the plaintiff has not posed a "plausible" right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554–55); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other

[6] It appears Plaintiff was a pretrial detainee when these alleged violations occurred. The Tenth Circuit holds that a pretrial detainee's claims as to physical harm are generally controlled by the Fourteenth Amendment's Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see Hooks v. Atoki*, 983 F.3d 1193, 1203–04 (10th Cir. 2020).

words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). Also, "[f]acts, not conclusions, must be pleaded—'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-00212, 2023 WL 1455954, at *2 (D. Wyo. Jan. 27, 2023), *aff'd in part, vacated in part, remanded sub nom. Harrell v. Ross*, No. 23-8007, 2024 WL 389407 (10th Cir. Feb. 2, 2024) (alteration in original) (quoting *Ashcroft*, 556 U.S. at 678).

As the court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249–50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of giving "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id*.

The facts stated in the following sections are taken from the TAC's allegations and are viewed in a light most favorable to Plaintiff. The facts are taken as true for this Order only.

**2. Failed Allegations and Claims**

**a. "Any applicable state laws"**

Throughout the TAC's "Statement of Claims" portion, Plaintiff sets forth the titles of his causes of action at the top of each section, in which he lists applicable facts allegedly supporting the specific causes of action in that section. ECF Nos. 16-1, 16-2. For instance, Plaintiff's first titled cause of action states, "FOURTH AMENDMENT UNREASONABLE USE OF DEADLY FORCE; ANY APPLICABLE STATE LAWS." ECF No. 16-2 at 10. Then for all but one ensuing section, *id.* at 28, he lists specific cause(s) of action, then again the more general, "ANY APPLICABLE STATE LAWS." *Id.* at 11, 14–19, 21–23, 25, 29, 35–36, 38, 40. That general statement, repeatedly used, does not state a claim upon which relief may be granted. The court therefore dismisses any causes of action referred to in the TAC by the term "ANY APPLICABLE STATE LAWS." After all—as stated above—the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

**b. Defendant SLCMJ**

The Cure Order notified Plaintiff that his Second Amended Complaint,

> improperly name[d] Salt Lake County Jail as a § 1983 defendant, when it is not an independent legal entity that can sue or be sued. *See Smith v. Lawton Corr. Facility*, No. CIV-18-110-C, 2018 U.S. Dist. LEXIS 45488, at *5 (W.D. Okla. Mar. 7, 2018) (stating correctional facilities "not suable entities in a § 1983 action").

ECF No. 13 at 2. Yet, the TAC continues to invalidly name the jail as a defendant. ECF Nos. 16-1, 16-2. *See Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (unpublished) ("Generally,

governmental sub-units are not separate suable entities that may be sued under § 1983.”). The jail is thus dismissed as an invalid defendant.

**c. Official capacity v. individual capacity**

The TAC states that Plaintiff sues every defendant in their official and individual capacities, except that Defendants SC, SL County, and (the already dismissed) SLCMJ are sued only in their official capacities. ECF No. 16-2 at 2–7.

The United States Court of Appeals for the Tenth Circuit explains:

> The Supreme Court has instructed that “official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.” *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). By contrast, individual-capacity suits “seek to impose individual liability upon a government officer for actions taken under color of state law.” *Id.*

*Coates v. Reigenborn*, No. 22-1339, 2023 WL 6810961, at *3 (10th Cir. Oct. 16, 2023) (unpublished); *see also Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015) (“A suit against a government agent in his official capacity is treated as a suit against the government.”).

All official-capacity claims against every defendant, except for SC and SL County, are therefore dismissed.

**d. Fourth Amendment v. Fourteenth Amendment excessive-force claims**

Plaintiff designates certain claims variously as Fourth Amendment or Fourteenth Amendment excessive force claims.

> In 42 U.S.C. § 1983, federal law provides a remedy for excessive-force claims based on the deprivation of a victim’s constitutional rights. While all excessive-force analyses contemplate similar interests, the examination of constitutional excessive-force claims is not a monolithic inquiry, applicable across the spectrum of circumstances. As a result, when addressing an excessive-force claim under § 1983, a court must begin its analysis “by identifying the specific constitutional right allegedly infringed by the challenged application of force.” Three different constitutional protections may apply. Courts choose the applicable protection based on an analysis of whether the alleged victim is “an arrestee, a pretrial detainee, or a convicted inmate of a penal institution.” Since 1985, the Fourth Amendment has

> governed excessive-force allegations made in the context of an arrest. Excessive-force claims by pretrial detainees who are in state custody are subject to the Fourteenth Amendment substantive due process analysis. Convicted criminals' excessive-force claims are examined under the Eighth Amendment's proscription against cruel and unusual punishment.

Douglas B. McKechnie, *Article: Don't Daze, Phase, or Lase Me, Bro! Fourth Amendment Excessive-Force Claims, Future Nonlethal Weapons, and Why Requiring an Injury Cannot Withstand a Constitutional or Practical Challenge*, 60 U. Kan. L. Rev. 139, 141 (2011) (citation modified).

**i. "FOURTH AMENDMENT UNREASONABLE USE OF DEADLY FORCE; FOURTEENTH AMENDMENT EXCESSIVE FORCE . . . SGT. MOFFITT; . . . SGT. ROBERTSON. . . ." ECF No. 16-2 at 11.**

The facts alleged in support of these claims are all included in an arrest context. *Id.* at 11–14. The Fourteenth Amendment excessive-force claim is thus dismissed.

**ii. "FOURTH AMENDMENT EXCESSIVE FORCE . . .; FOURTEENTH AMENDMENT EXCESSIVE FORCE . . . OFFICER WENDELBOTH . . . ." ECF No. 16-2 at 16.**

The facts alleged in support of these claims are all included in an arrest context. *Id.* The Fourteenth Amendment excessive-force claim is thus dismissed.

**iii. "FOURTH AMENDMENT UNREASONABLE USE OF DEADLY FORCE; FOURTEENTH AMENDMENT EXCESSIVE FORCE . . . SGT. COBB." ECF No. 16-2 at 18.**

The facts alleged in support of these claims are all included in an arrest context. *Id*. The Fourteenth Amendment excessive-force claim is thus dismissed.

**iv. "FOURTH AMENDMENT EXCESSIVE FORCE . . .; FOURTEENTH AMENDMENT EXCESSIVE FORCE . . . SGT. COBB; OFFICER WENDELBOTH; . . . OFFICER DOE-2." ECF No. 16-2 at 19.**

The facts alleged in support of these claims are all included in an arrest context. *Id.* at 19–20. The Fourteenth Amendment excessive-force claim is thus dismissed.

**v. "FOURTH AMENDMENT EXCESSIVE FORCE . . . FOURTEENTH AMENDMENT EXCESSIVE FORCE . . . [SL COUNTY DA's OFFICE] . . . LIEUTENANT DOE . . .; SALT LAKE CITY OR SANDY CITY POLICE DETECTIVE DOE 1 [AND] . . . POLICE DETECTIVE DOE-2 [AND] . . . POLICE OFFICERS DOE-3 THROUGH DOE-17." ECF No. 16-2 at 29.**

The facts alleged in support of these claims appear to be included in a context of Plaintiff being "one who ha[d not yet] had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Walton v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)). The Fourteenth Amendment excessive-force claim is thus dismissed.

**e. *Respondeat superior***

The allegations in this section are leveled at Defendants Robertson, Cobb, Chief Doe, Deputy-Supervisor Doe, SC, Gill, and SL County.[7] Defendants SC and SL County may not be sued on the basis of *respondeat superior*; these two defendants will thus not be discussed further under this section on supervisor liability. *See Thao v. Grady Cnty. Crim. Just. Auth.*, 159 F.4th 1214, 1227 (10th Cir. 2025) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (citation modified)).

---

[7] The causes of action implicated in this section are labeled (in relevant part) as follows in the TAC: "4. FOURTH AMENDMENT SUPERVISOR LIABILITY . . . SGT. ROBERTSON." ECF No. 16-2 at 14. "7. FOURTH AMENDMENT EXCESSIVE FORCE SUPERVISOR LIABILITY AND FAILURE TO INTERVENE . . . 'Sgt. Cobb' . . . ." *Id.* at 16. "11. FOURTH AMENDMENT EXCESSIVE FORCE SUPERVISOR LIABILITY AND FAILURE TO INTERVENE . . . SGT. COBB." *Id.* at 21. "12. FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S KNOWN SERIOUS MEDICAL NEEDS SUPERVISOR . . . LIABILITY . . . SANDY CITY POLICE CHIEF DOE . . . ." *Id.* at 22. "13. FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL RIGHT TO BE FREE FROM THE UNREASONABLE USE OF FORCE SUPERVISOR . . . LIABILITY . . . CHIEF DOE . . . ." *Id.* at 23. "14. FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL RIGHT TO BE FREE FROM THE UNREASONABLE USE OF FORCE SUPERVISOR . . . LIABILITY . . . SANDY CHIEF DOE . . . ." *Id.* at 25. "20. FOURTH AMENDMENT SUPERVISOR . . . LIABILITY UNLAWFUL DETENTION RESULTING IN THE DELIBERATE DEPRIVATION OF PLAINTIFF'S LIBERTY . . . DEPUTY-SUPERVISOR DOE . . . ." *Id.* at 40. "21. FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN MUNICIPAL EMPLOYEES AGAINST RETALIATING OUT OF ANGER OR ADRENALINE TO DEPRIVE PLAINTIFF HIS LIBERTY. SUPERVISOR . . . LIABILITY . . . D.A. SIM GILL . . . ." *Id.*

**i. Legal standards**

Plaintiff was notified in the Cure Order as follows: "Plaintiff may not name an individual as a defendant based solely on supervisory position. *See Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone does not support § 1983 liability)." ECF No. 13 at 4.

To elaborate, "[a] § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotation marks omitted). Still, § 1983 "does not authorize liability under a theory of *respondeat superior*." *Id.* (cleaned up). So, to adequately allege supervisory liability, "[t]he plaintiff . . . must show an 'affirmative link' between the supervisor and the constitutional violation." *Id.* (cleaned up) This means "more than a supervisor's mere knowledge of his subordinate's conduct." *Id.* (cleaned up). "Rather, a plaintiff must satisfy three elements . . . to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Id.* (cleaned up).

**ii. Analysis**

**Defendant Robertson**. To support his claim of supervisory liability, Plaintiff alleges Robertson was Defendant "Moffitt's operational supervisor during the operation at Plaintiff's residence." ECF No. 16-2 at 14. He further asserts Robertson "failed to issue any verbal warnings or commands to Plaintiff prior to using deadly force," though it was possible for Robertson to do so; and Robertson "joined Sgt. Moffitt in stealth and effectively ambushed Plaintiff." *Id.* at 14–15.

It is not entirely clear what Plaintiff means to accomplish with these contentions. In another section, he already seeks liability against Robertson for his allegedly direct actions of excessive force toward Plaintiff. *Id.* at 11–12, 15. His accusations of Robertson's failure to warn or command

him before using force and joining Moffitt in ambushing Plaintiff are repetitive of his direct-liability claims against Robertson (ordered to be answered below). That leaves only the single statement that Robertson was Moffitt's "operational supervisor" during this SWAT event in which Moffitt allegedly shot Plaintiff. *Id.* at 14. But, again, as Plaintiff was notified before filing the TAC, "Plaintiff may not name an individual as a defendant based solely on supervisory position. *See Mitchell v. Maynard*, 80 F.2d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone does not support § 1983 liability)." ECF No. 13 at 4.

Accordingly, any supervisory-liability claims against Robertson are dismissed.

**Defendant Cobb**. To support his claim of supervisory liability, Plaintiff alleges Cobb was Defendant "Wendelboth's supervisor during the operation" and also supervised "Doe-2." ECF No. 16-2 at 16, 21. He further asserts that, though Cobb knew Plaintiff had a stomach wound, Cobb "personally observed Officer Wendelboth kneel on Plaintiff's back, handcuff Plaintiff's hands behind his back, and leave Plaintiff in a prone restraint," "actions [which] could [have] exposed[d] Plaintiff to the obvious risk of seriously aggravating Plaintiff's known injuries" and all of with which "Cobb deliberately chose to not intervene." *Id.* at 17. Cobb also was there when Wendelboth and Doe-2 "march[ed] Plaintiff to the street." *Id.* at 21.

To properly state a claim of supervisory liability, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citation modified). The Tenth Circuit has further explained that a plaintiff asserting supervisory liability must plead as follows: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of

constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). This means an "affirmative link" must emerge linking the subordinates' purported unconstitutional actions and the explicit or implicit acceptance of a plan or policy. *Id.* at 1200–01.

Regarding supervisory liability, Plaintiff has fatally done nothing more than allege Cobb was in charge of Wendelboth and Doe-2, who allegedly actually committed the excessive-force violations. Further, Plaintiff has not alleged any policy as required by *Dodds*. *Id.* at 1199. Plaintiff's *respondeat-superior* claim against Cobb is therefore dismissed. Finally, the court notes that Cobb is ordered below to answer his alleged directly-participated-in Fourth Amendment failure to intervene.

**Defendant Chief Doe**. This refers to "Sandy City Police Chief." ECF No. 16-2 at 8. To support his claim of supervisory liability, Plaintiff alleges Chief Doe "had final policymaking authority for Sandy Police Department" and responsibility "for properly training the City's police officers up and through and including the time of SWAT's operation at Plaintiff's residence." *Id.* at 22–23, 25. These assertions and other supporting allegations, placed as they are under the headings of "FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN . . . SUPERVISOR AND/OR MUNICIPAL LIABILITY," are more properly considered under the below sections on municipal liability and are not further assessed as supervisory liability. After all, the mere contention that a defendant "maintains a position of authority"—even if the defendant "instituted the policy" that caused subordinates' unconstitutional conduct—is "insufficient to plausibly claim both personal participation and deliberate indifference." *Pittman v. Williams*, No. 22-1441, 2023 WL 6564910, at *2 (10th Cir. Oct. 10, 2023) (unpublished). Chief Doe is thus dismissed.

**Deputy-Supervisor Doe**. To support his claim of supervisory liability, Plaintiff alleges Deputy-Supervisor Doe "was a senior supervisor at the" SLCMJ with "final policymaking authority over the jail's operations on the date he was contacted by the [Salt Lake Legal Defender Association ("SLLDA")], including the authority to make decisions regarding whether to release Plaintiff, or to continue Plaintiff's confinement." ECF No. 16-2 at 40. Plaintiff further asserts that Doe "deliberately chose to continue Plaintiff's detention, despite having been warned about the unlawfulness of such conduct by a supervising attorney from" SLLDA. *Id.* Finally, Plaintiff contends Does "retaliated against" him because Doe believed "Plaintiff had shot a fellow police officer, and in support of the D.A.'s desire to keep Plaintiff confined pending the development of any potential future criminal charges." *Id.*

But these statements fail to state a claim upon which relief may be granted against Doe. Without alleging involvement of a court or the prosecution, it is not rational to expect a jail supervisor to release an inmate based simply on representations of unlawful detention from the inmate's defense attorney. Aside from that, Plaintiff was eventually convicted of crimes based on the events of the search-warrant execution. *See Darragh*, No. 2:21-CR-497-DS, ECF No. 98. Plaintiff here has not posed a "plausible" right to relief. *See Twombly*, 550 U.S. at 570. This claim is thus dismissed.

**Defendant Gill**. To support his claim of supervisory liability, Plaintiff alleges that, during the relevant time, Gill had final policymaking authority for Salt Lake County and "was responsible for properly training and supervising prosecutors," at a time when a policy was established of "not training, or not adequately training, prosecutors against retaliating out of anger or adrenaline against suspects believed to have injured police officers." ECF No. 16-2 at 40. These assertions and other supporting allegations, placed as they are under the headings of "FOURTEENTH

AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN . . . SUPERVISOR AND/OR MUNICIPAL LIABILITY," are more properly considered under the below section on municipal liability and are not further assessed as supervisory liability. *Id.* After all, the mere contention that a defendant "maintains a position of authority"—even if the defendant "instituted the policy" that caused subordinates' unconstitutional conduct—is "insufficient to plausibly claim both personal participation and deliberate indifference." *Pittman*, No. 22-1441, 2023 WL 6564910, at *2. This claim against Gill is thus dismissed.

**f. Municipal liability**

The TAC includes five claims of municipal liability. Three are dismissed in this section. Claim one—of the three to be dismissed—is brought against SC and is titled, "SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S KNOWN SERIOUS MEDICAL NEEDS." ECF No. 16-2 at 22. Claim two is brought against SL County and is titled, "MUNICIPAL LIABILITY UNLAWFUL DETENTION RESULTING IN THE DELIBERATE DEPRIVATION OF PLAINTIFF'S LIBERTY . . . DEPUTY-SUPERVISOR DOE; SALT LAKE COUNTY, UTAH." *Id.* at 40. Claim three is brought against SL County and is titled, "SINGLE-INCIDENT FAILURE TO TRAIN MUNICIPAL EMPLOYEES AGAINST RETALIATING OUT OF ANGER OR ADRENALINE TO DEPRIVE PLAINTIFF HIS LIBERTY. . . MUNICIPAL LIABILITY . . . D. A. SIM GIL[L]; A. D. A. JANE DOE; SALT LAKE COUNTY, UTAH . . . ." *Id.*

**i. General municipal-liability tenets**

In *Monell v. Department of Social Services*, the Supreme Court held that "person," as used in § 1983, includes "municipalities and other local government units"—i.e., "local government units which are not considered part of the State for Eleventh Amendment purposes."

436 U.S. 658, 691, 691 n.54 (1978). A local government may be liable for damages under § 1983 solely if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Id.* at 694. Thus, the Supreme Court requires "a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). This ensures "that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," instead of deeming the municipality liable merely because its employee violated the Constitution. *Id.*; *see also Monell*, 436 U.S. at 692 (holding local governments may not be sued under § 1983 on *respondeat superior* theory).

The applicable policy or custom may fall into any of these five categories:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up).

Still, whichever category of policy or custom is asserted, to adequately state a claim for SC's or SL County's liability, Plaintiff must allege "that (1) an official policy . . . (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." *See George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022) (citation omitted).

**ii. Category of single-incident failure to train**

It is true that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Id.* (citing *Okla. City v. Tuttle*, 471 U.S. 808, 821–22 (1985) (plurality opinion) (stating policy of inadequate training "is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*")). To satisfy § 1983, "[a] showing of simple or even heightened negligence will not suffice." *Bryan Cnty.*, 520 U.S. at 407. Instead, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

The deliberate-indifference standard is "stringent," "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. For a municipality to be "deemed deliberately indifferent," it must be shown that the municipality's "policymakers are on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61. This means that the municipality does nothing to improve training, while knowing that its training "program will cause constitutional violations," which "'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61–62 (quoting *Canton*, 489 U.S. at 395). A less strict fault standard "would result in *de facto respondeat superior* liability on municipalities." *Canton*, 489 U.S. at 392.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. A showing that policymakers persisted with an approach that was known (or should have been known) not to prevent employees' tortious conduct may establish deliberate indifference, "the conscious disregard [of] consequences." *Id.* "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Also, the presence "of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bryan Cnty.*, 520 U.S. at 407–08.

However, *Canton* left open "the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations." *Id.* at 409. Indeed, the Supreme Court in *Canton* "hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." *Id.* The Court further posited that "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice–namely, a violation of a specific constitutional or statutory right." *Id.* Importantly, "the high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable." *Id.* at 409–10. The

relevant question in this situation is "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Canton*, 489 U.S. at 391.

Of course, "[i]n virtually every instance where a person has had his . . . constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.* at 392. Indeed, merely alleging "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. For instance, it could be "that an otherwise sound program has occasionally been negligently administered." *Id.* at 391. Nor will it suffice to allege that an injury could have been prevented if the officers "had better or more training, sufficient to equip [them] to avoid the particular injury-causing conduct." *Id.* The latter could be said of "almost any encounter resulting in injury, yet not [necessarily] condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *Id.* And certainly, properly trained officers sometimes err, but "the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.*

"While '[a] pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train,' a plaintiff may succeed on a single-incident failure-to-train claim when 'the unconstitutional consequences of failing to train' are 'patently obvious.'" *Thao*, 159 F.4th at 1231 (quoting *Connick*, 563 U.S. at 62, 64 (quoting *Brown*, 520 U.S. at 409)); *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) ("[A]bsent a pattern of unconstitutional behavior, . . . [d]eliberate indifference may be found . . . only in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a

municipality's action or inaction." (citation modified)). Within that "narrow range of circumstances," *id.*, in which single-incident failure to train may apply, to state a claim upon which relief may be granted, Plaintiff must allege, "(1) the existence of a [municipal] policy or custom involving deficient training; (2) an injury caused by the policy that is obvious and closely related; and (3) that the municipality adopted the policy or custom with deliberate indifference to the injury." *Packard v. City & Cnty. of Denver*, 173 F.4th 1247, 1263 (10th Cir. 2026) (citation modified). The third element

> is satisfied when (1) the municipality's policymakers know to a moral certainty that their employees will confront a given situation; (2) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and (3) the wrong choice will frequently cause the deprivation of a citizen's constitutional rights.

*Id.* (citation modified).

Crucially, "a failure-to-train claim may not be maintained without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Thao*, 159 F.4th at 1231 (citation modified).

**iii. Claim one. "SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S KNOWN SERIOUS MEDICAL NEEDS . . . MUNICIPAL LIABILITY . . . . SANDY CITY POLICE CHIEF DOE ("Chief Doe"); CITY OF SANDY, UTAH . . . ."[8] ECF No. 16-2 at 22.**

The TAC asserts the following allegations regarding this claim. *Id.* at 22–23. SC had a "policy to not train, or to not adequately train, officers against treating gunshot detainees with deliberate indifference to their known serious medical needs." This policy "was itself adopted with

[8] This is an official-capacity claim and therefore Plaintiff need name only SC. Chief Doe is not considered further regarding municipal-liability claims.

deliberate indifference to the potential risks of injuries," such as "the intentional delay of Plaintiff's obviously needed serious medical care." The passage about the deliberate-indifference prong of failure-to-train contains allegations that SC "knew to a moral certainty [that] . . . especially SWAT officers, could confront operations during which suspects would be injured" by gunfire, and that training would have helped SC defendants make the difficult decisions of "[w]hether and/or when to begin life-saving measures; and . . . [w]hether and/or when to call for an emergency medical response."

Along with failing to allege any facts that support Plaintiff's bald assertion that Chief Doe was SC's policymaker as to training of SWAT officers for situations in which a suspect is wounded, the TAC "fails to allege necessary facts about the contours of the alleged policy and both when and why it came into effect." *Wright v. City of Ponca City*, No. 22-6137, 2023 WL 5765848, at *8 (10th Cir. Sept. 7, 2023) (unpublished). Further, the TAC "does not make any allegations as to when the relevant training occurred, who conducted the training, or how it was deficient." *Id.* The TAC instead "merely alleges, in entirely conclusory fashion that" SWAT officers "were somehow led to believe it is acceptable" to delay medical treatment to a suspect with a gunshot wound. *Id.* The TAC contains "so little information . . . that it is simply not plausible to conclude" that there was a "relevant policy aris[ing] from indifference to the constitutional rights of those" interacting with SWAT officers. *Id.* The TAC's "conclusory allegations . . . fail to plausibly nudge the municipal liability claim . . . past *respondeat superior* liability to municipal liability based on deliberate indifference." *Id.* (emphasis added).

"The entirely limited and conclusory allegations set out in the [TAC] are not enough to plausibly state the type of claim at issue here." *Id.* Again, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citation

modified). Given how tenuous such claims are, "more developed allegations than those presented here are required to plausibly state a failure-to-train claim." *Id.* (citing *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")). The TAC's "conclusory allegations fail to establish that facts available to [SC] policymakers put those policymakers on actual or constructive notice that acts or omissions by its [SWAT officers] were substantially certain to cause a violation of constitutional rights." *Wright*, No. 22-6137, 2023 WL 5765848, at *8 (citing *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (citation modified))).

With a talismanic quality, Plaintiff's allegations parrot almost word-for-word the generic elements of a cause of action for single-incident-failure-to-train municipal liability. *See Wright*, No. 22-6137, 2023 WL 5765848, at *8 ("In the absence of . . . allegations . . . identify[ing] a particular decision or a municipal policy maker to who this alleged failure to train can be attributed . . . the Amended Complaint can only be seen as attempting to impose *respondeat superior* liability on Ponca City."). Plaintiff's lack of supporting factual allegations for the generic elements of this cause of action, without adequate details intrinsic to the fact pattern of this case, dooms this claim. Regarding claim one, Plaintiff fails to state a claim upon which relief may be granted. Claim one is thus dismissed.

**iv. Claim two. "MUNICIPAL LIABILITY UNLAWFUL DETENTION RESULTING IN THE DELIBERATE DEPRIVATION OF PLAINTIFF'S LIBERTY . . . DEPUTY-SUPERVISOR DOE; SALT LAKE COUNTY, UTAH."[9] ECF No. 16-2 at 40.**

Plaintiff's allegations in support of this claim are stated in full as follows:

> a. Salt Lake County Sheriff's Deputy-Supervisor Doe was a senior supervisor at the jail and had final policymaking authority over the jail's operations on the date he was contacted by the LDA's office, including the authority to make decisions regarding whether to release Plaintiff, or to continue Plaintiffs confinement.
>
> b. Deputy-Supervisor Doe deliberately chose to continue Plaintiff's detention, despite having been warned about the unlawfulness of such conduct by a supervising attorney from the Salt Lake Legal Defenders Association.
>
> c. Deputy-Supervisor Doe retaliated against Plaintiff for Deputy-Supervisor Doe's belief Plaintiff had shot a fellow police officer, and in support of the D.A.'s desire to keep Plaintiff confined pending the development of any potential future criminal charges.

*Id.*

This same claim (under a theory of supervisor liability) against Deputy-Supervisor Doe has been dismissed above. Now reviewing the claim under a theory of municipal liability against SL County, the court concludes that Plaintiff fails to state a claim upon which relief may be granted. Plaintiff does not state a link between any policy promulgated by SL County and Doe's alleged choice to keep Plaintiff in detention. Furthermore, as the court noted about Doe's choice, it was purportedly made in defiance of a warning of illegality by Plaintiff's defense attorney. And it would never be expected that jail officials would be violating the Constitution simply by keeping an inmate incarcerated when requested to release the inmate by the inmate's defense attorney,

[9] This is an official-capacity claim and therefore Plaintiff need name only SL County. Deputy-Supervisor Doe is not considered further in this section on municipal liability.

without the alleged involvement of a court or the prosecution. As there is no predicate constitutional violation by a county employee, this claim is summarily dismissed.

**v. Claim three. "SINGLE-INCIDENT FAILURE TO TRAIN MUNICIPAL EMPLOYEES AGAINST RETALIATING OUT OF ANGER OR ADRENALINE TO DEPRIVE PLAINTIFF HIS LIBERTY. . . MUNICIPAL LIABILITY . . . D. A. SIM GIL[L]; A. D. A. JANE DOE; SALT LAKE COUNTY, UTAH . . . ."[10] ECF No. 16-2 at 40.**

These are Plaintiff's allegations in support of this claim. *Id.* at 40–42. SL County "had a policy of not training, or not adequately training, prosecutors against retaliating out of anger or adrenaline against suspects believed to have injured police officers." This policy "resulted in Plaintiff being unlawfully detained" based on "malicious prosecution" by SL County prosecutors—e.g., Defendants Gill and ADA Jane Doe. During a preliminary hearing, "ADA Jane Doe knowingly and intentionally provided false information during a preliminary hearing . . . and withheld exculpatory evidence." As ADA Jane Doe's supervisor, Gill did not intervene to prevent Doe's "unlawful conduct."

This failure-to-train claim flounders based on Plaintiff's omission of any allegation that the identified "un-, under-, or improperly-trained" prosecutors could be held liable under the Constitution. *Thao*, 159 F.4th at 1231. After all, Plaintiff attacks Doe's "decisions and actions in prosecuting [Petitioner] in his criminal case." *Majersky v. City & Cnty. of Denver*, No. 25-1200, 2026 WL 161381, at *3 (10th Cir. Jan. 21, 2026) (unpublished). Indeed, "[i] is well established that prosecutors are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial process, such as initiating and pursuing criminal

[10] This is an official-capacity claim and therefore Plaintiff need name only SL County. Sim Gill and ADA Jane Doe are not considered further in this section on municipal liability.

prosecutions." *Id.*; *see also Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *Bryson v. Macy*, 611 F. Supp. 2d 1234, 1263 (W.D. Okla. Apr. 30, 2009) (categorizing "handling of exculpatory evidence" as "intimately associated with the judicial process" and thus covered by absolute immunity (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 344–46 (2009)). Moreover, "[a]bsolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding." *Tiscareno v. Frasier*, No. 2:07-CV-336 TS, 2008 WL 4527340, at *8 (D. Utah Sept. 29, 2008). And, though an exception to this immunity exists when a prosecutor acts in an investigative or administrative function, here that exception does not apply. *See also Van de Kamp*, 555 U.S. at 344 (indicating "administrative duties concern[], for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like").

Thus, against these individual prosecutors, there is no underlying liability upon which Petitioner may predicate his failure-to-train claim. *Cf. Daniels v. United States*, No. CV 17-5465, 2018 WL 2163799, at*4 (E.D. La. Feb. 27, 2018), *report and recommendation adopted*, No. CV 17-5465, 2018 WL 2149224 (E.D. La. May 10, 2018) ("It is well settled that, where the underlying claims against the subordinate officers are barred by *Heck*, the related claims against the supervisory officials also must be barred." (citing *Payton v. Normand*, 599 F. App'x 190, 192 (5th Cir. 2015))); *Williams v. Town of Delhi*, No. CIV.A. 14-00043, 2015 WL 868746, at *7 (W.D. La. Feb. 27, 2015) (indicating—because supervisory claims require an underlying constitutional violation—when the underlying violation claim is barred by *Heck*, it cannot form basis of derivative supervisory claim).

This claim against SL County is therefore dismissed.

**g. Unnecessary Rigor Clause claim**

Plaintiff asserts Defendant SC violated the Utah Constitution's Unnecessary Rigor Clause "during the various flagrant violations to Plaintiff's constitutional rights." ECF No. 16-2 at 28.

**i. Specific allegations**

After Defendant Moffitt shot Plaintiff the first time, Defendants Moffitt and Robertson could have given "Plaintiff some warning or command . . . but chose instead to remain silent[,] . . . wait[ing] for Plaintiff to reemerge, and then shot at Plaintiff a second time, resulting in further injury to Plaintiff." *Id.*

Once the seriously injured Plaintiff surrendered to officers, Defendant Wendelboth knelt on his back intending to cause Plaintiff more pain. *Id.*

Defendants Cobb and Wendelboth "inflicted more pain on Plaintiff when they unnecessarily lifted Plaintiff from the floor by his arms, which were still cuffed behind his back." *Id.*

During a time when Plaintiff laid "prone with his hands cuffed behind his back," Defendant Cobb "threatened Plaintiff with deadly force when [Cobb] pointed the muzzle of his assault-style rifle directly at Plaintiff and told Plaintiff to 'shut the fuck up' when Plaintiff requested medical help." *Id.* at 29.

Defendants Wendelboth and Doe 2 "paraded Plaintiff through a crowd of officers, neighbors, and on-lookers" with the intent "to demoralize and humiliate Plaintiff before Plaintiff was allowed medical care." *Id.*

In the ambulance, Plaintiff was lying "on his back on top of his cuffed hands," which was painful and caused Plaintiff to ask that "his hands be moved to the front of his body," but Defendant "Wendelboth refused." *Id.*

**ii. Legal standards**

Under Utah law, two conditions are applied to assess if a municipality like SC may be held liable for constitutional offenses. *Stella v. Davis Cnty.*, No. 23-4122, 2024 WL 4764694, at *11 (10th Cir. Nov. 13, 2024) (unpublished). The first element "requires the court to determine whether the plaintiff's constitutional rights were violated." *Kuchcinski v. Box Elder Cnty.*, 2019 UT 21, ¶ 39. "[T]his threshold determination does not answer who was responsible for the violation, especially in cases involving multiple state actors that acted in concert to effect a deprivation of a protected right." *Id.* "Instead, it focuses on what occurred to the plaintiff through state action." *Id.*

Second, once a violation has been established, the court must then determine whether the municipality "should be held responsible, through the imposition of tort liability, for that violation." *Id.* ¶ 45. To prevail on municipal liability, a plaintiff must establish that "the constitutional violation [she] suffered was a flagrant violation." *Id*. When a municipality is the alleged violator, a flagrant violation can be shown "by proving that a deliberately indifferent County policy caused the violation." *Id.* ¶ 46. To so prove, a plaintiff must establish "(1) the existence of a municipal policy or custom, (2) that this policy or custom evidences a deliberate indifference to the plaintiff's constitutional rights, and (3) that this policy or custom was closely related to the ultimate injury." *Id.* ¶ 32 (cleaned up).

**iii. Conclusion**

Under this claim, Plaintiff names only SC as a defendant. But—fatally—Plaintiff does not allege that an SC policy caused him injury. *See id.* This cause of action is thus dismissed.

**h. Prolonged handcuffing claims**

Using several different bases, Plaintiff raises claims of unconstitutional prolonged handcuffing. ECF No. 16-2 at 29. These claims are brought against SL County DA "Lieutenant Doe"; SL City or SC police department "Detective Doe-1"; SL City or SC police department "Detective Doe-2"; and SL City or SC police department "Officer Doe-3" through "Officer Doe-17." *Id.* The bases of the excessive force, failure to intervene, and intentional infliction of emotional distress claims are all included in the section below ordering those defendants to answer the TAC. However, Plaintiff included under the TAC's prolonged-handcuffing heading, a claim he titled, "DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONALLY PROTECTED LIBERTY INTEREST." ECF No. 16-2 at 29. Under this claim, Plaintiff asserts,

> [T]he State failed to file charges within the statutorily imposed time limits while Plaintiff lay chained to the hospital bed. Therefore, the continuation of Plaintiff's restraint and detention resulted in the deliberate indifference to Plaintiff's constitutionally protected liberty interests by the unknown officers who kept Plaintiff detained after the statutorily imposed time limits for criminal charges to be filed had expired.

*Id.* at 34.

Plaintiff was alerted by the Cure Order that he must affirmatively link each element of each cause of action to a named or identifiable defendant, or face dismissal. ECF No. 13. But Plaintiff's spare and conclusory allegations (about deliberate indifference to his liberty interest) do not meet the standards Plaintiff was told of in the Cure Order. *Id.* In fact, none of these allegations is linked to a specific, identifiable defendant. Though apprised of his pleading duties, *see* ECF No. 13, Plaintiff does not isolate the allegedly unconstitutional acts of each defendant here; thus, Plaintiff gives inadequate notice of "the nature of the claims against each" defendant. *Robbins*, 519 F.3d at 1250. Indeed, "[f]acts, not conclusions, must be pleaded"; the Court is not required to accept as true "a 'legal conclusion couched as a factual allegation.'" *Renaud*, No. 1:22-CV-00212, 2023 WL

1455954, at *2 (quoting *Iqbal*, 556 U.S. at 678). Because the facts Plaintiff alleges are insufficient to support a plausible claim, this possible cause of action is dismissed.

**i. Fourth Amendment malicious prosecution**

In the heading of a separate section of the TAC, Plaintiff asserts a claim of "FOURTH AMENDMENT MALICIOUS PROSECUTION BASED ON FABRICATED EVIDENCE" against Defendants SL County DA Gill and Assistant DA Jane Doe. ECF No. 16-2 at 35. However, all of Plaintiff's allegations under this section refer to the party acting in each situation as "the State." Gill and Jane Doe are never mentioned by name again after the heading.

This is in contravention to the following directions Plaintiff was given in the Cure Order:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

*Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." *Id.* at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id.*

ECF No. 13 at 5–6.

Plaintiff's failure—to affirmatively link by name individual defendants, Gill and Jane Doe, to each element of the cause of action of malicious prosecution—thwarts his claim. Alternatively, Defendants Gill and Jane Doe are "absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial process, such as initiating and pursuing criminal prosecutions." *Jarvis v. Cnty. of Teton Wyoming*, No. 25-8034, 2026 WL 1122106, at *4 (10th Cir. Apr. 24, 2026) (unpublished) (citation modified).

Plaintiff thus fails to state a claim against Defendants Gill and Jane Doe here.[11]

**j. Civil conspiracy claim**

Plaintiff alleges Defendants Gill, Jane Doe, Moffitt, Robertson, and SLCPD crime scene technician Doe met to conspire against him. ECF No. 16-2 at 36–37.

> A plaintiff asserting a § 1983 conspiracy claim must plead that he was (1) deprived of a constitutional right (2) by a conspiracy comprised of or including conspirators acting under color of state law. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). Both elements are essential. *Id.* Indeed, the "essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." *Id.* (citation omitted). For this reason, [the plaintiff's] failure to plausibly plead the deprivation of a constitutional right dooms this claim. *See Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995).

*Moses-El v. City and Cnty. of Denver*, No. 20-1102, 2022 WL 1741944, at *17 (10th Cir. May 31, 2022) (unpublished).

---

[11] When Plaintiff argues under this cause of action that "[t]here existed no probable cause to continue Plaintiff's . . . confinement beyond the State's highly emotional and subjective desire to deliberately punish Plaintiff for Sgt. Moffitt's injuries," he leaves out the fact that he was later convicted of federal charges in this court for his crimes occurring on the date of, and related to, the search-warrant execution. *See Darragh*, No. 2:21-CR-497-DS, ECF No. 98. In fact, the State's successful motion to dismiss in Plaintiff's state criminal case stated that dismissal was sought "for the reason[] that the Defendant has pled guilty to charges related to this incident in United States District Court, District of Utah, DUTX2:21CR00497 DS." *Darragh*, No. 211910277, ECF No. 76. Plaintiff's statement (at the end of the TAC's section claiming malicious prosecution) is simply not true, when he says, "All criminal charges against Plaintiff were subsequently dismissed . . . ." ECF No. 16-2 at 36.

Plaintiff asserts Defendants "deliberately carried out" a conspiracy "with the specific goals to prejudice Plaintiff, to retaliate against Plaintiff for Sgt. Moffitt's injuries, to shield the shooting officers from potential liability for their unlawful conduct, and to deprive Plaintiff of his liberty pending the adjudication of Plaintiff's state criminal case." ECF No. 16-2 at 38. Plaintiff further asserts Defendants "strategiz[ed] Plaintiff's malicious prosecution." *Id.* at 37.

Assessing the first prong of a conspiracy claim, the Court looks at whether Plaintiff has adequately alleged facts supporting whether Defendants deprived Plaintiff of a constitutional right. Initially, the asserted goals of Defendants "to prejudice Plaintiff" or "to shield the shooting officers from potential liability for their unlawful conduct" do not identify legal causes of action that Plaintiff may pursue in this civil-rights case. These "goals" are thus not addressed further here. The remaining "goals" are evaluated below.

**i. Retaliation**

In civil-rights actions, a retaliation claim may be stated under the First Amendment with a plaintiff alleging "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation modified). But, Plaintiff's statement that Defendants retaliated against him "for Sgt. Moffitt's injuries" presumably caused by Plaintiff's actions, ECF No. 16-2 at 38, does not meet the requirement that Plaintiff must have been "engaged in a constitutionally protected activity" to which Defendants were behaving adversely, *Shero*, 510 F.3d at 1203. Injuring a police officer is not a constitutionally protected

activity. Thus, as to any alleged retaliation, Plaintiff does not adequately allege facts supporting the premise that Defendants deprived Plaintiff of a constitutional right.

**ii. Malicious prosecution and deprivation of liberty**

A malicious-prosecution claim has five elements: "1) Defendants caused [Plaintiff's] continued confinement or prosecution; 2) the original action terminated in [Plaintiff's] favor; 3) there was no probable cause to support [Plaintiff's] initial arrest, continued confinement, or prosecution; 4) Defendants acted with malice; and 5) [Plaintiff] sustained damages." *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022).

Again, Plaintiff was ultimately convicted of federal charges in this Court for his crimes during the search-warrant execution. *See Darragh*, No. 2:21-CR-497-DS, ECF No. 98. And, the State's motion to dismiss in Plaintiff's state criminal case explained that dismissal was requested because "the Defendant has pled guilty to charges related to this incident in United States District Court, District of Utah, DUTX2:21CR00497 DS." *Darragh*, No. 211910277, ECF No. 76. Plaintiff's statement (at the end of the TAC's section asserting "civil conspiracy") is plainly false, when he asserts, "All criminal charges were subsequently dismissed . . . ." ECF No. 16-2 at 38.

So, the action here was not ultimately terminated in Plaintiff's favor, nor was there a lack of probable cause to hold Plaintiff.

**iii. Conclusion**

Having omitted any facts to support the first prong of a civil-conspiracy cause of action—that Plaintiff was "deprived of a constitutional right," *Dixon*, 898 F.2d at 1449—Plaintiff fails to state a claim of civil conspiracy. This claim is thus dismissed. *See* ECF No. 16-2 at 36.

**k. Unlawful detention**

Plaintiff asserts that Defendant SL County Deputy Doe was called by Plaintiff's defense attorney, who demanded Plaintiff's immediate release. *Id.* at 38. Doe allegedly rejected the defense attorney's demand. *Id.* Plaintiff further alleges that "there was no probable cause to continue . . . Plaintiff's confinement . . . once [Doe] became aware of Plaintiff's required release," and that "[t]he original action terminated in Plaintiff's favor when the State subsequently dismissed all criminal charges." *Id.* at 39.

"Probable cause exists 'when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *Burke v. City of Okla. City*, No. 24-6149, 2025 WL 1444410, at *5 (10th Cir. May 20, 2025) (unpublished) (quoting *Rife v. Okla. Dep't of Pub Safety*, 854 F.3d 637, 645 (10th Cir. 2017)).

First, it—again—does not make sense that a jail employee would release a detainee simply on the word of the detainee's attorney over the phone, with no alleged involvement of a court or the prosecutor. Second, parallel prosecutions proceeded from the date of the search-warrant execution to the date of Plaintiff's federal conviction on charges stemming from that incident. This appears to support Deputy Doe's "belief that an offense has been . . . committed," when deciding not to release Plaintiff on his defense attorney's demand. Third, criminal proceedings did not terminate in Plaintiff's favor. This cause of action is therefore dismissed.

**C. CLAIMS WARRANTING FURTHER LITIGATION**

The Court concludes that—against the below remaining defendants—Plaintiff appears to have stated claim(s) upon which relief may be granted:

**1. Greg Moffitt**, who shall answer the claims of **a.** unreasonable use of deadly force, ECF No. 16-2 at 10-14; and **b.** deliberate indifference to Plaintiff's serious medical needs, *id.* at 14.

**2. Curtis Robertson**, who shall answer the claims of **a.** unreasonable use of deadly force, *id.* at 11–14; and **b.** failure to intervene, *id.* at 15.

**3. Officer Wendelboth**, who shall answer the claims of **a.** excessive force, *id.* at 16, 19–20; and **b.** deliberate indifference to Plaintiff's serious physical harm, *id.* at 17–20.

**4. Sgt. Cobb**, who shall answer the claims of **a.** failure to intervene *id.* at 16–17, 21; **b.** deliberate indifference to Plaintiff's serious physical harm, *id.* at 17–20; **c.** excessive force, *id.* at 18–21; and **d.** intentional infliction of emotional distress, *id.* at 18.

**5. Sandy City Police Department Officer Doe-1**,[12] who shall answer the claim of deliberate indifference to Plaintiff's serious medical needs, *id.* at 17–18.

[12] Counsel for the fully named Sandy City defendants must perform the limited discovery (using the TAC's dates and description of other not-fully-named defendants' alleged roles in unconstitutional activities) necessary to determine the full names of defendants whom Plaintiff has been unable to fully name. Though some unnamed defendants may not work for Sandy City, they are asserted to have been possibly working in tandem with Sandy City defendants in securing Plaintiff in the hospital. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821–22, 832 (7th Cir. 2009) ("Because [Plaintiff] is a prisoner he may not be in a position to identify the proper defendants, or all of them, in his complaint. . . . We think it is the duty of the district court to assist him, within reason, to make the necessary investigation. . . . [Plaintiff] should have the opportunity to engage in limited discovery to ascertain the identities of these staff members, whose conduct he has explicitly described."); *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (stating, before dismissing unidentified defendant due to inability to permit service of process, district court should have helped incarcerated *pro se* litigant with inquiry into unknown defendant's identity when plaintiff provided numerous details like officer's surname, assigned unit, and date and location of incident; and district court "may pursue any course that it deems appropriate to a further inquiry into the identity" of the unknown defendant); *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (deciding, when plaintiff described with sufficient clarity the head of the . . . jail, that plaintiff's "description was sufficiently clear to allow service of process on the 'Chief'"); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery."); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."); *Gordon v. Leeke*, 574 F.2d 1147, 1152–53 (4th Cir. 1978) ("A district court is not required to act as an advocate for a *pro se* litigant; but when such a litigant has alleged a cause of action which may be meritorious against a person or persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted . . . ."). Once counsel has determined the complete names of not-fully-named Sandy City defendants, counsel must also follow for those defendants the service directions found in this Order. At the time Sandy City counsel files its answers, counsel must also file a report on their efforts to identify the other unnamed defendants, either with Sandy City, Salt Lake Police Department, or Salt Lake County.

**6. Sandy City Police Department Officer Doe-2**, who shall answer the claims of **a.** excessive force, *id.* at 19–20; and **b.** deliberate indifference to Plaintiff's serious physical harm, *id.* at 19–20.

**7. Sandy City**, who shall answer two municipal liability claims, *id.* at 23–28.[13]

**8. Salt Lake County District Attorney's Office investigator Lieutenant Doe**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.* at 29–34.

**9. Salt Lake City or Sandy City Detective Doe-1**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**10. Salt Lake City or Sandy City Detective Doe-2**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**11. Salt Lake City or Sandy City Officer Doe-3**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**12. Salt Lake City or Sandy City Officer Doe-4**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**13. Salt Lake City or Sandy City Officer Doe-5**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**14. Salt Lake City or Sandy City Officer Doe-6**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

[13] The claims are described as follows in the TAC: "FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL RIGHT TO BE FREE FROM THE UNREASONABLE USE OF FORCE . . . MUNICIPAL LIABILITY . . . SANDY CITY"; and "FOURTEENTH AMENDMENT SINGLE-INCIDENT FAILURE TO TRAIN RESULTING IN THE DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL RIGHT TO BE FREE FROM THE UNREASONABLE USE OF FORCE . . . MUNICIPAL LIABILITY . . . CITY OF SANDY . . . ." ECF No. 16-2 at 23, 25.

**15. Salt Lake City or Sandy City Officer Doe-7**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**16. Salt Lake City or Sandy City Officer Doe-8**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**17. Salt Lake City or Sandy City Officer Doe-9**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**18. Salt Lake City or Sandy City Officer Doe-10**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**19. Salt Lake City or Sandy City Officer Doe-11**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**20. Salt Lake City or Sandy City Officer Doe-12**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**21. Salt Lake City or Sandy City Officer Doe-13**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**22. Salt Lake City or Sandy City Officer Doe-14**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**23. Salt Lake City or Sandy City Officer Doe-15**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**24. Salt Lake City or Sandy City Officer Doe-16**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

**25. Salt Lake City or Sandy City Officer Doe-17**, who shall answer claims of excessive force, failure to intervene, and intentional infliction of emotional distress. *Id.*

The Court requires each of these defendants to answer the TAC and follow the litigation schedule set forth below.

## D. ORDER

**IT IS ORDERED** as follows:

**1.** Plaintiff's motion for leave to file a third amended complaint is **GRANTED**. ECF Nos. 16, 16-1, 16-2.

**2.** For failure to state a claim upon which relief may be granted, Defendants Worthington; Sandy City Chief Doe; Salt Lake County; Salt Lake County Metro Jail**;** Salt Lake County Deputy Doe and Supervisor Doe; and Salt Lake County District Attorney employees Sim Gill and Jane Doe are **DISMISSED** with prejudice. Plaintiff has failed to state a claim, even though the Court gave Plaintiff clear instructions (in its Cure Order) explaining, for instance, the principles of affirmative link, suable entities, and *respondeat superior*. Three years and four iterations of the complaint into this litigation, it is apparent to the Court that further opportunity to amend would not lead to a different result.

**3.** Under Federal Rule of Civil Procedure 4(c)(1), the Court requests waiver of service from the following defendants found in the Third Amended Complaint:

> **a.** Sandy City defendants Sergeant Greg **Moffitt**, Sergeant Curtis **Robertson**, Sergeant **Cobb**, Officer **Wendelboth**, Officer **Doe 1**, Officer **Doe 2**, and **Sandy City**.
>
> **b.** Salt Lake County District Attorney's Office investigator **Lieutenant Doe**.[14]

[14] Once it receives a report from Sandy City counsel regarding efforts to identify this defendant by name, the Court will issue further direction toward a request for waiver of service from this defendant.

**c.** Sandy City, or Salt Lake City police officers, **Detective Doe-1**, **Detective Doe-2**, **Doe-3**, **Doe-4**, **Doe-5**, **Doe-6**, **Doe-7**, **Doe-8**, **Doe-9**, **Doe-10**, **Doe-11**, **Doe-12**, **Doe-13**, **Doe-14**, **Doe-15**, **Doe-16**, and **Doe-17**.[15]

**4.** The Clerk of Court shall initially mail the following items to Sandy City defendants only: Notice of a Lawsuit and Request to Waive Service of a Summons, AO form 398; 2 copies of Waiver of the Service of Summons, AO form 399; and copy of the Third Amended Complaint, ECF Nos. 16-1, 16-2, and this Order. These items shall be mailed to the following address:

City Recorders Office
1000 Centennial Way, Ste 301
Sandy, Utah 84070

**5.** Defendants are cautioned that Federal Rule of Civil Procedure 4 requires Defendants to cooperate in saving unnecessary costs of service of summons and complaint. Under Rule 4, if Defendants do not waive summons service, after being asked by the Court to do so on Plaintiff's behalf, Defendants must bear service costs unless good cause be shown for not signing and returning the waiver form. If service is waived, this action will proceed as if Defendants had been served on the day the waiver is filed, except that Defendants need not file an answer until **60 days** from the date when the waiver request was sent. *See* Fed. R. Civ. P. 4(d)(3). (This allows more days to respond than would be required if formal summons service is necessary.) Defendants must read the statement at the waiver form's end that more completely describes the party's duties about waiver. If service is waived after the deadline given in the Notice of a Lawsuit and Request to Waive Service of a Summons but before Defendants have been personally served, the Answer shall be due **60 days** from the date on which the request for waiver was sent or **20 days** from the date the waiver form is filed, whichever is later.

---

[15] Once it receives a report from Sandy City counsel regarding efforts to identify these defendants by name, the Court will issue further direction toward a request for waiver of service from these defendants.

**6.** If Defendants do not execute waivers, attorney(s) for Defendants must file a notice with reasons for not giving a waiver. A notice is due **30 days** from the date a request was sent.

**7.** Defendants shall answer the Third Amended Complaint, ECF Nos. 16-1, 16-2, observing Federal Rules of Civil Procedure and the following litigation schedule:

**a.** If Defendant asserts the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process, Defendant must,

**i.** within **60 days** of date of waiver request, file an answer;

**ii.** within **90 days** of filing an answer, prepare and file a *Martinez* report[16] limited to the exhaustion issue; and,

**iii.** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**b.** If Defendants challenge the complaint's bare allegations, Defendants shall, within **60 days** of date of waiver request, file a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).

**c.** If Defendants choose not to rely on an exhaustion defense and want to pierce the complaint's allegations, Defendants must,

**i.** within **60 days** of date of waiver request, file an answer;

---

[16] *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987), the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

**ii.** within **90 days** of filing an answer, prepare and file a *Martinez* report addressing the complaint's substance; and,

**iii.** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**d.** If Defendants want to seek relief otherwise contemplated under procedural rules, Defendants must file an appropriate motion within **90 days** of filing an answer.

**8.** Plaintiff must, within **30 days** of its filing, respond to the *Martinez* report. Plaintiff must expect that *Martinez* reports may "be used for their truth against a plaintiff if the plaintiff has been warned that failing to respond to the *Martinez* report could lead to that result." *Ortiz v. Torgensen*, 857 F. App'x 419, 426–27 (10th Cir. 2021) (unpublished). This is the warning.

**9.** Plaintiff must, within **30 days** of its filing, respond to a motion to dismiss or summary-judgment motion. For Plaintiff's information and convenience, the Court has attached the procedural rules governing summary-judgment practice.

**10.** Within **14 days** of filing of Plaintiff's opposition, Defendants shall file a reply brief.

**11.** Any evidence filed to support the parties' summary-judgment positions must be reviewed by the parties to ensure that **a.** only relevant evidence is submitted (for instance, if filing medical records, ensure that only medical records applicable to the exact claims at issue are filed); and **b.** the numbering on the pages of all evidentiary submissions is clear on each page of each document and matches up to any references in citations to those documents in any summary-judgment motion, response, and reply. If evidentiary documents do not comply with this requirement, the summary-judgment motion, response, or reply, will be struck from the docket, subject to refiling with compliant evidentiary documents.

**12.** A motion to dismiss or for summary judgment shall be deemed submitted as of the date the reply brief is due. No hearing will be held on a motion unless the Court so orders at a later date.

DATED September 3, 2026.

BY THE COURT:

Jill N. Parrish

Jill N. Parrish
United States Chief District Court Judge

**Fed Rule of Civil Procedure 56**

Summary Judgment

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

**(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)** defer considering the motion or deny it;

**(2)** allow time to obtain affidavits or declarations or to take discovery; or

**(3)** issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

**(1)** give an opportunity to properly support or address the fact;

**(2)** consider the fact undisputed for purposes of the motion;

**(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

**(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

**(1)** grant summary judgment for a nonmovant;

**(2)** grant the motion on grounds not raised by a party; or

**(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

**(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

**(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to

respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

## DISTRICT OF UTAH LOCAL CIVIL RULE 56-1
## SUMMARY JUDGMENT MOTIONS AND MEMORANDA

**(a) Compliance with DUCivR 7-1**.
A motion for summary judgment, response, and reply must comply with DUCivR 7-1 in addition to the requirements in this rule.
**(b) Motion**.
If a party files more than 1 summary judgment motion at the same time, the court may strike the motions and require that the motions be consolidated into a single motion. A motion for summary judgment must be titled "Motion for Summary Judgment," be supported by an Appendix of Evidence, as described in 56-1(e), and include the following sections:

(1) Introduction and Relief Requested. A concise statement of each claim or defense for which summary judgment is sought and a clear statement of the relief requested.

(2) Background (Optional). An optional section to provide context for the case, dispute, and motion. If included, this section should be placed between the Introduction and Relief Requested and the Statement of Undisputed Material Facts. The Background need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Statement of Undisputed Material Facts. A concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law. Only facts necessary to decide the motion should be included in this section. The moving party must cite with particularity the evidence in the Appendix that supports each factual assertion.

(4) Argument. An explanation for each claim or defense, establishing, under the applicable supporting authority, why the moving party is entitled to judgment as a matter of law. The argument section should include a statement of each claim or defense on which the party is seeking summary judgment and supporting authorities. Any factual references must cite to the Appendix.

**(c) Response**.
A response to a motion for summary judgment may be accompanied by an Appendix of Evidence, if applicable, and must include the following sections.

(1) Introduction. A concise statement explaining why summary judgment should be denied.

(2) Background (Optional). An optional section to provide context for the case, dispute, and motion. If included, this section should be placed between the Introduction and the Response to Statement of Undisputed Material Facts. The Background need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Response to Statement of Undisputed Material Facts. A party must restate only those specific facts the opposing party contends are genuinely disputed or immaterial, providing a concise statement explaining why the fact is disputed or immaterial, and cite to the evidence used to refute the fact. The responding party should not restate undisputed facts. If a fact is inadmissible, the responding party must object, as provided in DUCivR 7-1(b), rather than move to strike the inadmissible fact. Factual citations must reference the appropriate Appendix.

(4) Statement of Additional Material Facts (if applicable). If additional material facts are relevant to show that there is a genuine dispute of material fact, the party must state each additional fact and cite with particularity to the Appendix that contains the supporting evidence. Do not include duplicate copies of evidence already in the record. Instead, the party must cite to evidence in a previously filed Appendix.

(5) Argument. An explanation for each claim or defense, establishing, under the applicable supporting authority, why summary judgment should be denied. Any factual citations must cite to the appropriate Appendix.

**(d) Reply**.

The moving party may file a reply. In the reply, a party may cite to evidence that was not previously cited only to rebut a claim that a material fact is in dispute. Otherwise, a reply may not contain additional evidence, and, if it does, the court may disregard it.

**(e) Appendix of Evidence**.

(1) All evidence cited in a motion, response, or reply must be compiled in an appendix. Do not include duplicate copies of evidence already in the record. Instead, the party must cite to evidence in a previously filed Appendix.

(2) The Appendix must include:

(A) a captioned, cover-page index that—

(i) lists each exhibit by number;

(ii) includes a description or title of the exhibit; and

(iii) identifies the source of the exhibit;

(B) complete copies of all exhibits, including deposition transcripts. For lengthy deposition transcripts, the party may submit the relevant pages of the deposition and the 4 pages before and 4 pages after the sections cited. Manuscript transcripts are permitted, unless otherwise ordered by the court.

**(f) Failure to Respond**. If a party fails to timely respond, the court may grant the motion without further notice if the moving party has established that it is entitled to judgment as a matter of law.

## DISTRICT OF UTAH LOCAL CIVIL RULE 7-1
## MOTIONS AND MEMORANDA

**(a) Motion, Response, and Reply**.

(1) Motion and Memorandum. Except as otherwise allowed by this rule, a motion and memorandum must be contained in the same document and include the following:

(A) an initial separate section stating succinctly the specific relief sought and the grounds for the relief; and

(B) a recitation of relevant facts, supporting authority, and argument.

(2) Exception to the Requirement to Include Facts and Supporting Authority. The requirement to include facts and supporting authority under section 7-1(a)(1)(B) does not apply to the following motions:

(A) to extend time for the performance of an act, whether required or permitted, if the motion is made before the current deadline expires;

(B) to continue a hearing or other court proceeding;

(C) to appoint a next friend or guardian ad litem;

(D) to substitute a party;

(E) for a settlement conference;

(F) for referral to or withdrawal from the court's ADR program; and

(G) for approval of a stipulation between the parties.

(3) No Motion Within a Response or Reply. A party may not make a motion, including a motion under Fed. R. Civ. P. 56(d), or a cross-motion in a response or reply. Any motion must be separately filed. A cross-motion may incorporate by reference the arguments contained in a response, if applicable.

(4) Page and Word Limits and Filing Times. Unless the court orders otherwise or the parties stipulate to shorter requirements, the following apply:

(A) *Motions Filed Under Fed. R. Civ. P. 12(b), 12(c), or 23(c)*.

(i) A motion or a response may not exceed 25 pages or 7,750 words.

(ii) A reply may not exceed 10 pages or 3,100 words.

(iii) A response to a motion must be filed within 28 days after service of the motion.

(iv) A reply may be filed within 14 days after service of the response.

(B) *Motions Filed Under Fed. R. Civ. P. 56(a)*.

(i) A motion or a response may not exceed 40 pages or 12,400 words.

(ii) A reply may not exceed 20 pages or 6,200 words.

(iii) A response to a motion must be filed within 28 days after service of the motion.

(iv) A reply may be filed within 14 days after service of the response.

(C) *Motions Filed Under Fed. R. Civ. P. 65*.

(i) A motion or a response may not exceed 25 pages or 7,750 words.

(ii) A reply may not exceed 10 pages or 3,100 words.

(iii) A response to a motion must be filed within 14 days after service of the motion.

(iv) A reply may be filed within 14 days after service of the response.

(D) *All Other Motions*.

(i) A motion, response, or reply not specified above may not exceed 10 pages or 3,100 words.

(ii) A response to a motion must be filed within 14 days after service of the motion.

(iii) A reply may be filed within 14 days after service of the response.

(5) Stipulation to Extend Filing Time. Parties seeking to extend the filing time for a response or reply must file a stipulated motion before the filing time has passed. A stipulation to extend a filing time is ineffective without a court order.

(6) Sections Applicable to Page or Word Limits and Certification Requirement.

(A) All headings, citations, quotations, and footnotes count toward the page or word limit.

(B) The caption, face sheet, table of contents, table of authorities, signature block, certificate of service, and exhibits do not count toward the page or word limit.

(C) When a document exceeds the page limit, a party must certify at the end of the document that the document complies with the word limit (e.g., "I, [attorney's name], certify that this [name of document] contains [number of words] words and complies with DUCivR 7-1(a)(4).").

(7) Overlength Motion, Response, or Reply.

(A) Unless modified by the assigned judge in a court order or on their "practices and procedures" page on the court website, a party must first obtain a court order authorizing the additional pages or words before filing a motion, response, or reply that exceeds the page or word limits in section 7-1(a)(4). The motion must be filed, and the order obtained, before filing the overlength motion, response, or reply. The motion to exceed the page or word limit must include:

(i) the number of additional pages or words that are needed; and

(ii) a statement of good cause why additional pages or words are needed. (B) An overlength motion, response, or reply must contain a table of contents.

(8) Motion Seeking Relief Similar to Another Party's Motion. Each party seeking relief from the court must file a motion that identifies the relief sought and grounds for the requested relief. A party may incorporate by reference another party's arguments in the party's own motion, if applicable, but filing a "Notice of Joinder" is improper.

(9) Additional Memoranda. Unless otherwise ordered, the court will not consider additional memoranda.

**(b) Motion to Strike Evidence Improper; Evidentiary Objections Permitted**.

(1) A motion to strike evidence offered in another party's motion, response, or reply is improper.

(2) If evidence is offered in a motion or a response, the response or reply may include an objection to the evidence. In exceptional circumstances, the objection may be filed as a separate document simultaneously with the response or reply.

(3) If new evidence is offered in a reply, an evidentiary objection must be filed within 7 days after service of the reply.

(4) A party may file a response to an evidentiary objection at the same time any response or reply is due or no later than 7 days after the objection was filed, whichever is later.

**(c) Supplemental Authority**.
When pertinent and significant authority comes to the attention of a party before the court has entered a decision on a motion, the party may file a Notice of Supplemental Authority, which may not exceed 2 pages.

(1) The notice must contain, without argument, the following:

(A) a reference either to the page of the memorandum or to a point argued orally to which the supplemental authority pertains; and

(B) the reasons why the supplemental authority is relevant.

(2) The court may decide a motion without waiting for a response to the notice. If the court has not ruled on the motion, a party may file a response, which may not exceed 2 pages, within 7 days after service of the notice.

**(d) Supporting Exhibits**.
When evidence is cited in a motion, response, or reply, the relevant portions of the evidence must be attached or filed separately and contemporaneously with the document.

**(e) Proposed Orders**.

(1) When Required. A party must provide a proposed order when filing a motion under section 7-1(a)(2) of this rule or when the court orders otherwise.

(2) Filing Procedures. To file a proposed order, a party must:

(A) attach it as an exhibit to the motion; and

(B) email an editable copy of the proposed order, copied to other parties or their counsel—

(i) for motions filed under DUCivR 77-2, to utdecf_clerk@utd.uscourts.gov; and

(ii) for all other motions, to the assigned judge's chambers.

**(f) Failure to Respond**.
Except as provided in DUCivR 56-1(f), failure to respond timely to a motion may result in the court granting the motion without further notice.

**(g) Oral Arguments on Motions**.
The court may set any motion for oral argument. Otherwise, a party may request oral argument on a motion and must show good cause. If oral argument is not set, the court will determine a motion based upon the parties' written memoranda.

**(h) Summary Judgment**.
This rule and DUCivR 56-1 apply to motions for summary judgment and related memoranda.

**(i) Courtesy Copies**.
The court may require a party to provide courtesy copies as described in the court's ECF Procedures Manual and on the Judge Information section of the court's website.

**(j) Sanctions**.
Failure to comply with the requirements of this rule may result in the court imposing sanctions, including:

(1) returning the document for resubmission in accord with the rule;

(2) denial of the motion; or

(3) any other sanction the court deems appropriate.